George McCarl, Appellee, v. Clarke County, Appellant.

**Highways:** VACATION: JURISDICTION. There is no statutory provision for the vacation of a highway except upon petition to the board of supervisors the same as for the establishment of a highway. They cannot be discontinued or vacated merely at the pleasure of the officers upon whom the power of discontinuance is conferred; and until a petition for vacation has been filed the supervisors have no jurisdiction to act.

**Same.** The Code of 1897, relating to the establishment and vacation of highways, made no distinction between the terms ''vacate'' and ''discontinue.''

**Same:** ABANDONMENT.  The abandonment of a highway is chiefly a question of the intent and acts of the public; neither nonuser, obstruction nor failure to keep the highway in repair will necessarily work an abandonment.

**Same:** VACATION: DAMAGES: RIGHTS OF ABUTTING OWNER.  Where a highway has been legally established the failure, merely, of the board of supervisors to rebuild a bridge, or to improve the highway, will not work a vacation or discontinuance of the highway; nor can a property owner recover damages against the county for such failure on the ground that the highway had thus been discontinued.

**Same:** BRIDGES: DUTY OF COUNTY TO REBUILD: DISCRETION.  Under the statutes existing prior to the revision of the road laws by the 35th General Assembly the county supervisors had a discretion in the matter of rebuilding a highway bridge.

*Appeal from Clarke District Court.*—Hon. H. K. Evans, Judge.

TUESDAY, OCTOBER 6, 1914.

ACTION at law for damages because of the alleged vacation of a public highway.  Trial to the court, without a jury.  Judgment for plaintiff.  Defendant appeals.—*Reversed.*

*Henry Stivers,* for appellant.

*O. M. Slaymaker* and *W. B. Tallman,* for appellee.

PRESTON, J.—This action was brought in 1912 under the law as it existed prior to the road laws of the Thirty-Fifth General Assembly.  (Chapters 122, 123.)  In 1911 one Barr owned a farm; the eighty acres of land to be described.  He sold it to plaintiff, who owned and farmed it for the year 1912, when he sold it.  Barr assigned his claim to the plaintiff.  The court allowed $200 as damages, for depreciation in rental value of the land of $100 for each year.

The land is the S. E. 1/4 of the N. W. 1/4 and the N. E. 1/4 of the S. W. 1/4 of the section.  The buildings are on the

east side of the land and halfway north and south. There is, and for twenty years has been, a regularly established highway running east and west on the north side of the section, also one on the south side, and one running north and south through the center of the section. The last mentioned is the one in controversy.

About eight or ten years ago another road was established running north and south on the east side of the section. The north end of plaintiff's land is therefore one-fourth mile from the road on the north, and the south end of his land is one-fourth mile from the road on the south of the section, and his house is one-half mile from these roads. His is the only house on the one mile of road through the center of the section. This road is described by some of the witnesses as a by-road, and it seems to have been but little traveled.

In the south half of the mile of road in question, and near the south end, the adjacent owner has constructed three wire fences across the highway. We do not understand that plaintiff makes any claim that defendant county is responsible for the obstructions by these fences. In this highway, both in the north and south halves, are three ditches, extending partially across the highway, but not entirely obstructing it. Crossing this mile of road, near the north end, is a stream which plaintiff describes as thirty to forty feet wide and fifteen or twenty feet deep; the sides nearly straight up and down; it cannot be crossed with a team. Until five or six years ago, there was a county bridge across this stream. At about that time the bridge was washed out. The county, though requested to rebuild it, has refused to do so. The road has not been worked since about that time.

A witness, who was a member of the board of supervisors, testifies, giving his conclusion, in part, that in regard to the road in question:

It was really the understanding that the old road was to be vacated and the one-half mile east established. But no action was taken as to the vacation of the old road. We concluded to do no further work on the old road.

There is no claim that there is any record showing that such was the understanding and no claim that the road was in fact vacated in the manner provided by statute. Though the question of abandonment of this road is referred to in the pleadings, it is not relied upon, nor has it been argued.

Plaintiff seeks to bring his case within the rule of *McCann v. Clarke County,* 149 Iowa, 13. It was there held that the vacation of a highway adjacent to a tract of land, to which the owner has no other convenient means of access, causes a special damage to the owner, separate and distinct from that suffered by the general public, and that he is entitled to recover such damages.

The claim here is that the failure of the county to rebuild the bridge and work the road is equivalent to a vacation of the highway, or, as counsel for plaintiff state it:

Plaintiff claims damages in this case because of the failure and refusal of defendant to keep up the bridges and work the highway in this section, so that he will have ingress and egress to and from his land, and because it has discontinued such highway. He does not claim damages by reason of any statutory provision; but he claims: That, as the road furnishes him the only means of access to his property, the county owes him the duty of keeping it in repair, and that the failure to do so on its part renders it liable to him in damages. That as the county is liable for damages, if the highway is formally vacated, it cannot, by failure to work and keep up said highway, in effect vacate the same and thereby escape the payment of damages, and also claims that its act in discontinuing the highway makes it liable in damages. That a landowner has such an interest or property right in an abutting highway, which furnishes him ingress to and egress from his land, that if such highway is taken away from him by the county, and his ingress and egress is interfered with, he is entitled to recover damages in proportion to his injury. This proposition is laid down by this court in the case of *McCann v. Clarke County,* 149 Iowa, 13.

This presents a new question for determination. Appellant concedes that, if the board of supervisors had actually

vacated the road, it would be liable, but contends that there was no statute in Iowa at that time charging the county with the duty of repairing roads and bridges; that the power vested in the board is permissive only, and that the board has a discretion in the matter; that the acts of the board are legislative and governmental in their character, and not subject to review by the courts. It concedes that if the county undertakes to build bridges, and builds negligently, it is liable to a person injured through such negligence.

Section 422, par. 17, of the Code, provides that the board of supervisors has power "to lay out, establish, alter or discontinue any county highway heretofore laid out, or hereafter to be laid through or within the county, as may be provided by law." And section 1484 provides that any person desiring the establishment, vacation or alteration of a road shall file in the auditor's office of the proper county a petition in substance as follows, etc.

In the last section, the same method of procedure is prescribed for vacating as for establishing a road. Our attention has not been called to any other provision of the statute in regard to vacating or discontinuing highways. Under section 1484, it has been held that, until such a petition has been filed, the board has no jurisdiction, and that the county could not be estopped by the acts of the auditor and the board from setting out the illegality of the proceedings. *Curtis v. Pocahontas County,* 72 Iowa, 151. The board can act upon petition only. *Lamansky v. Williams,* 125 Iowa, 582. Public highways can be discontinued or vacated only after proper proceedings had in the manner pointed out by statute. They cannot be discontinued at the pleasure of a town or of the officers upon whom the power of discontinuing or vacating highways is conferred. 37 Cyc. 180. Statutory notice must be given. *Moffitt v. Brainard,* 92 Iowa, 122, and note. And it is held in some states that an order or judgment discontinuing a public highway must substantially conform to the statutory require-

1. Highways: vacation: jurisdiction.

ments.  37 Cyc. 187.  In Minnesota it has been held that the order must be complete and sufficient on its face, and its defects cannot be helped out or supplied by parol.  *Keyes v. Minneapolis Ry. Co.,* 36 Minn. 290 (30 N. W. 888).

It is conceded by appellee in argument that, in case of the vacation of a road, the damages would accrue at once, and to the person owning the land at the time of the vacation, but claims that, in case of the discontinuance of the road, the damages do not accrue in one sum, but are continuing.

The theory of plaintiff on the trial was, and that is the argument in this court, that the county might at any time conclude to rebuild the bridge, and that, for this reason, the damages would be continuing, which would negative the thought, it seems to us, that there had been a vacation.  A vacation of the road would necessarily be permanent, whereas, under plaintiff's theory, he would have a right of action for a temporary failure to rebuild.

In the claim presented to the board of supervisors, it is stated:

You are notified that such damages are continuous, and the undersigned will, from time to time, claim such additional damage as he suffers.

The evidence was directed to the difference in the rental value for the years 1911 and 1912, and this was the theory of the trial court in awarding damages.  The award was for $100 for the year 1911 to Barr, the then owner of the land, and whose claim had been assigned to plaintiff, and $100 to plaintiff for the year 1912.

It appears to us that plaintiff is driven from, or abandons, his position that the mere failure of the county to rebuild the bridge, and the failure of the county, or the township officers, to work the road, is equivalent to a vacation of the road, and that such failure is indirectly a vacation.  But counsel seeks to make a distinction between a vacation and a discontinuance of the road.  They say that,

2. SAME.

if the road is vacated, it is necessarily a discontinuance, but that there may be a discontinuance without a vacation. If this last proposition be true, they would not come within the rule of the *McCann* case, *supra,* where it was ruled that the abutter may recover for the vacation of a road. But we are of opinion that there is no distinction, as here used in our statutes, in regard to discontinuing or vacating roads. Section 422, before quoted, reads that the board of supervisors may vacate or discontinue any county highway, etc. Section 1484 does not mention the matter of discontinuance, or use that word, but refers to the establishment, vacation, or alteration of roads, etc. A definition for the word "vacate" is to put an end to, and for the word "discontinuance" to leave off; to cease. The books refer to the two words in the same sense. Thus in 37 Cyc. 180, under the heading "Mode of Effecting Vacation," it is stated that "public highways can be discontinued or vacated only after proper proceedings," etc., and "they cannot be discontinued at the pleasure of a town or of the officers," etc.; and at page 187 in the same volume it is stated that an order or judgment discontinuing a public highway must conform to the statute, etc.; and at page 175, same volume, under the heading "Vacation," it is said that "public highways are created by statute, either directly or through delegated power, and are under full control of the Legislature." While this control is, as regards vacation, generally exercised through the instrumentality of local governmental subdivisions of the state, the Legislature may, in the absence of constitutional limitations, discontinue highways by direct legislative act. These citations are given more to show the use of the words "vacate" and "discontinue" than for other purposes.

A road may not be discontinued unless it is vacated, or possibly by abandonment. Abandonment would be a discontinuance in one sense. The question of abandonment of

3. Same: abandonment.    a road involves, not so much the question of time, though after a long time there may arise a presumption. But it involves more the question of

intent and acts of the public. Nonuser is not enough, unless coupled with affirmative evidence of a clear determination to abandon. 37 Cyc. 195. Nor will obstructions or encroachments necessarily work an abandonment. 37 Cyc. 199. Nor does the failure to keep the road in repair necessarily work an abandonment. 37 Cyc. 197; *Maire v. Kruse,* 85 Wis. 302 (55 N. W. 389, 26 L. R. A. 449). But, whether there has been an abandonment of the road in question, and whether, if it has been abandoned, plaintiff may recover under the doctrine of *McCann v. Clarke County,* we need not determine, nor is it necessary to further discuss the question of abandonment, because it is not relied upon or argued. We may say, however, that we would not be disposed to extend the doctrine of the *McCann* case.

It would seem, then, from the cases before cited, and the foregoing discussion, and we so hold, that the board of supervisors may not vacate or discontinue a road, which has been legally established, by its mere failure to rebuild a bridge which has been washed out, or by the failure of the board of supervisors or township officers to work the road. To hold otherwise would tend to encourage litigation for the failure of a county or city to rebuild or repair, even though for a short time, and it would be to hold that the board of supervisors had no discretion in the matter. There might be a case, perhaps, where the board of supervisors, by fraud, in fact vacate or discontinue a road, or attempt to do so, and fail to take the proper steps required by statute, and for the purpose of preventing abutters specially injured from recovering damages as for a vacation. But this may well be doubted for the reasons before stated. But such a case has not been made here. We may observe that to attempt to so vacate might be a dangerous proceeding for a county, for after a road has been established and the county has assumed to act, if there has been no vacation, discontinuance, or abandonment of it, the county might be liable in damages to one injured by reason

4. SAME: vacation: damages: rights of abutting owner.

of its failure to maintain the road and bridges in a reasonably safe condition. But this we do not, of course, now determine.

Appellee cites and relies upon *Bembe v. Anne Arundel County*, 94 Md. 321 (51 Atl. 179, 57 L. R. A. 279), where it is held that where the county does not formally vacate or discontinue the highway, but allows it to get out of repair and become and remain impassable, and in that way accomplish the same purpose, it is liable in damages, because it may not do in an indirect way that which it cannot do directly. Counsel say this is the only case they have been able to find. That case was decided upon demurrer; the court saying:

As we are dealing exclusively with the case made by the declaration, we must confine our discussion to its legal sufficiency; and, upon the case there stated, we are of the opinion, for the reasons we have assigned, that a good cause of action has been set forth.

The argument seems plausible at first blush. It does not appear, from the opinion in that case, what the statutes of Maryland are in regard to vacating highways, whether a petition must be filed and notice given, or whether, under the statutes of that state, the law enjoins upon the road authorities the duty to rebuild or repair, or whether the power is permissive only, with a discretion in the board of supervisors, whether in the first place they will build bridges or rebuild them when destroyed. These matters are not referred to in the opinion. The theory of that case seems to be that the acts of the road authorities in failing to keep the road in repair constituted an obstruction and a nuisance, and that the same rule applies to the county as to an individual.

The point decided in *McCann v. Clarke County* seems not to have been involved in the Maryland case, for in the Maryland case the court says:

Whether a public road can be lawfully closed by the county commissioners without compensating individuals, who may be injuriously affected by the discontinuance of the high-

way, is a question not now involved, and therefore not calling for a decision. . . . The pending·suit is founded on the alleged total obstruction of a public road, including, as a part thereof, a public bridge. Had the obstructions, which are alleged to consist in a condition of negligent disrepair, caused an injury to the person of the plaintiff whilst attempting with due care to use the road, there could be no doubt of his right to maintain an action therefor and recover compensation for the injury. . . . But the acts complained of in the declaration now under examination do not bring this case within the principle just announced, because this is not a suit for a personal injury or for an injury to personal property sustained whilst in actual use of the road, but it is a suit by an abutting proprietor for the maintenance of a public nuisance by the defendant whereby the plaintiff was injured.

Such is not the theory of the plaintiff in the instant case. The *Bembe* case is cited in note to *Sloss & Co. v. Johnson,* 8 L. R. A. (N. S.) 226, 229, and *McKay v. Enid,* 30 L. R. A. (N. S.) 1021, 1026, but on the point as to whether a person so situated suffers special damage, and do not refer to the other points raised in the present case in regard to vacation of a road and discretion of the officers in rebuilding a bridge, etc.

We are of opinion that the board of supervisors, under our statutes and decisions, has a discretion in the matter. It has been so decided, and is admitted by counsel for appellee in argument. They say:

Appellee also agrees that an action will not lie to compel the board of supervisors to establish a highway, work roads, or build bridges. That such matters are discretionary with the board, and the courts have no power to control such discretion.

The same rule applies as to rebuilding bridges. *State v. Morris,* 43 Iowa, 192.

The statute gives the board power to build and repair bridges, but does not, or at least did not when this case was

tried, or when plaintiff's alleged cause of action arose, enjoin upon the board the duty to do so. Appellant

5. SAME: bridges: duty of county to rebuild: discretion.

concedes that, if the county undertakes to build and builds negligently, it is liable to a person injured through such negligence, but it contends that, if it declines to build at all, no power exists in the courts to compel it to build, or to hold it liable in damages for not building.

In the *McCann* case, McCann had a road which gave him the only ingress and egress to and from his farm. The board took it away by affirmative and positive legislation. Not so in the instant case. Here the board merely failed to rebuild a bridge which had been washed out. In the present case, the road is still there. There is a wide difference between doing some positive act to take away a road and doing nothing, and which may be only temporary. As before stated, plaintiff argues that the county may conclude to rebuild this bridge at any time. In that case, the failure or refusal to rebuild the bridge would be temporary only, and would not be a vacation, discontinuance, or abandonment.

Section 422 of the Code enumerates the powers of the board of supervisors. Among other things, paragraph 18 of that section gives the board power to provide for the erection of all bridges which may be necessary, and which the public convenience may require within their respective counties, and to keep the same in repair, except as is otherwise provided by law. The power to build or repair is conferred, but the statute goes no further. The duty to build, or rebuild, or repair is, or was not then, enjoined upon the board. Whether the law, as changed since the trial of this case, does so, we do not determine.

Though the county may be liable in damages for failure of the board of supervisors to maintain a county bridge in a safe condition, the board cannot be compelled by mandamus to build, or restore a bridge which has become impassable. The reason for this is that such is a matter of discretion with

the board, to be exercised in view of the public interests. *Leonard v. Wakeman,* 120 Iowa, 140; *State v. Morris,* 43 Iowa, 192; *Perry v. Supervisors,* 133 Iowa, 281; *Nolan v. Reed,* 139 Iowa, 68, 71; *Lake Drummond Canal & Water Co. v. Burnham,* 147 N. C. 41 (60 S. E. 650, 17 L. R. A. (N. S.) 945, 125 Am. St. Rep. 519).

In the *Morris* case, *supra,* the court said that the question as to rebuilding is not different in principle from building a bridge in the first instance. It has been held that removal of obstructions in a highway may be compelled by mandamus against the officers whose duty it is to remove them. *Patterson v. Vail,* 43 Iowa, 142; *Cook v. Gaylord,* 91 Iowa, 219; 37 Cyc. 255. This is so because the duty of removing obstructions from highways is enjoined upon road supervisors. One reason for such a statute is, perhaps, that such obstructions constitute a nuisance. Code, section 5078.

As before stated, the holding in the Maryland case, before cited, and relied upon by plaintiff, is placed upon the ground that failure to maintain a highway was an obstruction of the highway, and a nuisance. This is not the question here, but the question in this case is, rather, whether there has been a vacation or discontinuance of this highway, and whether the board of supervisors has a discretion in the matter of rebuilding the bridge.

Defendant contends that, omitting the question of rebuilding the bridge, the working of the road in question is a matter devolving upon the township officers. It has been so held. *Nolan v. Reed, supra; Soper v. Henry County,* 26 Iowa, 269; *McCullom v. Black Hawk County,* 21 Iowa, 417.

There is evidence in this case tending to show that the township officers had ceased working the road before the board of supervisors refused to rebuild the bridge, and that the board considered it a useless expense to rebuild the bridge, if the highway was otherwise obstructed and impassable.

But, after all, the real question in this case is whether, under the circumstances shown, the failure to rebuild the

bridge and maintain the road amounts to a vacation or discontinuance of the road, so as to bring the case within the rule of the *McCann* case. From the view we have already expressed, we think such failure does not have that effect.

It follows that, under the evidence, the judgment should have been for the defendant, and, under the rule that we may render such a judgment as the district court should have rendered, the cause is reversed and remanded, with direction to enter judgment for defendant and against the plaintiff for costs.—*Reversed.*

LADD, C. J., and EVANS and WEAVER, JJ., concur.