J. H. STONER, et al., Appellees, v. FIRST AMERICAN FIRE
INSURANCE COMPANY of New York, Appellant.

No. 43108.

OCTOBER 23, 1935.

REHEARING DENIED FEBRUARY 15, 1936.

McMartin, Herrick & Langdon, and Kenneth H. Davenport, for appellant.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellees.

PARSONS, J.—This case is brought to collect on a policy of fire insurance by J. H. Stoner, who claims as the owner of the property insured, and J. D. Raitt, who claims under a mortgage on the property insured.

It has been before this court twice before this, same title, the first time being reported in 215 Iowa 665, 246 N. W. 615, and the next time being reported in 218 Iowa 720, 253 N. W. 821.

The facts upon which it is based are that prior to April 25, 1931, one James M. Fadden was the holder of the legal title to lots 43 and a part of 44 in the town of Prescott, Iowa. On that date he transferred the property by deed to J. H. Stoner, one of the plaintiffs herein, whose copartner, J. D. Raitt, held a $1,500 mortgage on the property. The insurance originated as follows: Raitt applied to R. F. Sullivan of Afton, Iowa, for insurance upon the building on the property. Sullivan, agent of the defendant, forwarded an application prepared by him for such insurance to the Chicago office of the appellant insurance company. The insurance company sent the policy insuring Fadden against loss on the building to the amount of $4,500 to Sullivan, signed by the officers of the insurance company, and Sullivan countersigned it of date March 19, 1931. It was then mailed to Raitt.

■■■ Subsequently, Raitt took the policy to Sullivan to have an indorsement made to protect his interest under the mortgage. The policy was left with Sullivan, who sent it to the insurance company. The insurance company attached a "loss payable" clause, printed on a sheet of paper, to the policy, and returned it to Sullivan, who signed the "loss payable" clause and sent the policy to Raitt. The signature of no officer of the company was affixed to the clause at the time it was sent to Sullivan, and

at the time it was returned to Raitt it contained the signature of Sullivan, of date April 30, 1931.

The question has been raised by the appellant as to the right of Sullivan to bind the company by so signing the ''loss payable'' clause. We think there is nothing in that question for the reason that Sullivan sent the policy to the company, accompanied by a letter, in evidence in the case, saying: ''Please attach a mortgage clause for $1500 in favor of J. D. Raitt, of Omaha, Nebraska, to the herewith enclosed policy, and oblige R. F. Sullivan, Agent.'' The company defendant sent back to Sullivan the policy with the ''loss payable'' clause attached, but unsigned. In view of the contents of the letter, we think the attachment of this clause to the policy by the company, and sending it with the clause so attached to Sullivan, was a direction and an authority by the company for Sullivan to sign and deliver the same.

In all the transactions up to the time of the fire, Raitt, in procuring the insurance, and in all of the things, without question, represented Stoner. In other words, he was acting to protect the interest of himself in the mortgage, and the interest of Stoner as the owner of the legal title after Stoner became such owner. Whatever he did was because he was acting with Stoner's consent and in Stoner's place, and was binding on Stoner. Besides, Stoner testified on this trial in reference to these matters that Raitt, his copartner, handled the deal for him in all particulars in his purchase of the Prescott property.

Subsequent to the attachment of the ''loss payable'' clause Raitt told Sullivan of the transfer of the property from Fadden to Stoner, and had at the time with him the policy with the signature of Fadden to the ''assignment of interest'' clause on the policy. The blank spaces left for the insertion of the names of the interested parties had not been filled in. Raitt asked Sullivan to take care of the policy to protect Stoner's interest in the policy. Sullivan, in the presence of Raitt, filled in the ''assignment of interest'' clause, and signed the consent of assignment, which was printed on the policy, and handed the policy to Raitt, and says he told Raitt before that it should be sent to Chicago. All this was done on the 18th day of May, 1931. Sullivan never notified the insurance company of this situation. June 1, 1931, the insured building was .totally destroyed by fire. Formal proof of loss was never furnished to the insurance company.

This is immaterial under the present issues in the case, for under the issues as they stand now the defendant waived the formal proof of loss. The insured property was encumbered by another mortgage prior to Raitt's, which was in the process of being foreclosed.

In the first case, reported in 215 Iowa, at page 665, 246 N. W. 615, it was held that plaintiff, as assignee, before loss of a policy of fire insurance, has the burden, in the case of loss and action on the policy, to show that the insurer consented to the assignment. If the consent is in the form of a writing signed by a purported agent of the insurer the assignee must show, if the agent was a soliciting agent, the agent's authority. Of course, the insurer may negative such showing of authority.

In the second case in this court, reported in 218 Iowa 720, 253 N. W. 821, there was introduced in evidence as bearing upon the authority of Sullivan, the request of the defendant to the commissioner of insurance of the state of Iowa, for a license for R. F. Sullivan, of Afton, as its agent. The body of the request, was as follows: "Farmers of Cedar Rapids Department of the First American Fire Insurance Company of New York, State of New York, hereby certifies that the above named, a resident of Iowa, is a qualified and reliable individual of good character and has been appointed agent for the transaction of its authorized business of Insurance in the State of Iowa until the first day of April, 1931." The court held that certain exhibits were admissible for the purpose of showing Sullivan was the company's agent. The trial court instructed the jurors they might take the exhibits into consideration in determining Sullivan's scope of power. This court then said, 218 Iowa 720, on page 724, 253 N. W. 821, 823, on appeal:

"We have reached the conclusion that the exhibits were admissible only for the purpose of establishing that Sullivan was an agent of the company and that they were neither relevant nor material to the question of Sullivan's power as agent. The requests are made upon forms provided by the commissioner of insurance, and were used to procure a license for Sullivan in compliance with the law. To have any relevancy to the question of Sullivan's power, the request must be construed to be a statement by the company that Sullivan had been appointed agent for the transaction of any and all of its author-

ized business in the State of Iowa. We think the language used and the circumstances under which it was used preclude such construction. In this situation, it would be little short of a perversion of the law to admit the exhibits in evidence as bearing upon the question of the scope of the agent's power, or to permit the jury to consider the exhibits in passing upon that question.''

**█■█** When the time came for the trial of the case now before us, an amended and substituted answer was filed by the defendant waiving proof of loss, and in that answer specifically denied that Sullivan had any authority or power to bind the defendant by signing the consent to assignment of contract of insurance sued upon, as alleged in plaintiff's petition, and set up several other defenses. Division V of the amended and substituted answer is as follows:

''This defendant by way of affirmative defense states that one of the terms and conditions contained in the contract of insurance herein sued upon is as follows: 'Unless otherwise provided by agreement of this company, this policy shall be void if any change other than by death of the insured, whether by legal proceedings, judgment, voluntary act of the insured, or otherwise, takes place in the interest, title, possession or use of the subject of insurance, if such change in the possession or use makes the risk more hazardous;' and defendant states that without the knowledge or consent of this defendant, and without any agreement by this defendant, the said James Fadden did, on or about the 15th day of May, 1931, execute a deed, transferring said property to J. H. Stoner, and that, therefore, said contract of insurance is void.''

Division VI of the amended and substituted answer is as follows:

''This defendant, by way of affirmative defense, states that one of the terms and conditions contained in the contract of insurance herein sued upon is as follows: 'Unless otherwise provided by agreement of this company, this policy shall be void if said policy is assigned before loss;' and this defendant shows the Court that contrary to and in violation of said provision above quoted, and without the knowledge, consent or agreement of this defendant company, an assignment of said policy was

made on or about the 16th day of May, 1931, and that, therefore, said policy is void.''

In this case there was introduced in evidence the appointment or certificate of agency issued by the defendant company to R. F. Sullivan. That certificate was as follows:

''By authority of This Commission R. F. Sullivan of Afton, County of Union, State of Iowa, is hereby appointed soliciting agent of this company and as such is authorized to receive applications for insurance upon property located within the limits or in the vicinity of Afton, Iowa.

''Except in the Towns Where This Company Has a Recording Agency in accordance with written or printed instructions from this company and to receive and transmit with such application the premiums therefor, in accordance with the terms of the form of application issued by this company, but in no case except upon special written order from this company, to collect amounts due for premiums on policies previously issued, or for notes payable to the company for premiums.''

This authority expressly named Sullivan as a soliciting agent, and says, ''and as such is authorized to receive applications for insurance upon property located within the limits or vicinity of Afton, Iowa.''

Here, then, in a certificate of authority, issued by the company, is the appointment of Sullivan, not as a general or recording agent, but as a soliciting agent. So he had only the authority as between him and the company, of soliciting agent.

At the conclusion of the evidence, the defendant moved the court to withdraw certain exhibits from the jury, and then stated following that:

''And without prejudice to the above motions, the defendant now moves to withdraw from the consideration of the jury the issue of waiver and the part plead by the plaintiff in regard to any acts or circumstances of A. L. Lucas constituting a waiver in this case; and as reasons therefor respectfully shows to the court as follows: That there is no evidence in this case to show that Mr. Lucas, even if the testimony for the witnesses for the plaintiffs is true, knew or had knowledge at the time of the claimed telephone conversation in regard to this assignment. He had never seen it and didn't know in regard to it.''

990

The court, in ruling on this motion, says:

"The second motion filed by the defendant to withdraw from the consideration of the jury the question of waiver is sustained, and the plaintiffs given an exception."

The court then ruled against the defendant on the motion to withdraw from the consideration of the jury the issue of the waiver, and the part pleaded by the plaintiff in regard to any act and circumstances of Lucas constituting a waiver in the case, and sustained this ground of the motion. It then overruled the motion to direct a verdict.

So then, with this motion sustained as to the conversation with A. L. Lucas, there was no evidence in the record to show that Sullivan had authority to act for the company in signing the consent to the transfer of the property of Fadden to Stoner.

67 C. J. 289 says:

" 'Waiver' has been defined as a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim or privilege, which except for such waiver the party would have enjoyed; the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right would be surrendered and such person forever deprived of its benefits."

So, had this case stood without the lower court sustaining the motion to strike, it would be incumbent upon the plaintiff to prove that it was first a voluntary and intentional relinquishment or abandonment of a known advantage, benefit, claim, or privilege, which, except for such verdict, the party would have enjoyed.

We see no evidence in this record that would permit the court submitting to the jury any question of waiver supported by the evidence aimed at in the motion to withdraw or strike, which the court sustained. It is not conceivable in this case that the company defendant knew or that Lucas knew, or that either intended to waive any right of defense existing by reason of the transfer to Stoner. Further, this cannot be proven by the mere fact that Sullivan was the agent of the defendant. A mere showing of agency without any designation would leave the burden of proof upon the plaintiff to show whether he was a soliciting agent, or a general or recording agent.

In the case of Green v. Phoenix Ins. Co., 215 Iowa 1220, 247 N. W. 660, it appears that this same property and farm involved in this case were involved in that case. One Jake Stoner was the holder of a first mortgage on this property for $1,500, and on the 12th of January, 1931, he commenced an action to foreclose the mortgage, and on the 19th of January applied to the agents of the Phoenix Insurance Company for insurance upon the house, and had a policy for $1,800 issued thereon in the name of Bernice Hagaman as owner, with loss, if any, payable to Stoner as his interest might appear. Decree was entered March 3, 1931, and the property was sold by special execution and purchased by Jake Stoner for the amount of the mortgage, interest, and costs. On the first of June, 1931, the house was totally destroyed by fire, and on the 10th of July, 1931, the plaintiff filed an action in the district court of Adams county, Iowa, to recover the amount of the policy of insurance. There was judgment against the Phoenix Insurance Company in the case. The insurance company appealed, and amongst other things raised the question that the court erred in refusing to sustain the first ground of its motion to dismiss plaintiff's case. That ground was that the property covered by the policy sued upon was transferred after the policy had been written, without the knowledge or consent of the defendant, contrary to the terms of the policy. The terms relied on were the same pleaded in this case in division V of the defendant's answer herein.

It was contended in the cited case that the provisions of the policy were violated because after the issuance of the policy the premises were transferred to James Fadden, and by him to Stoner. The appellee claimed that at the time the insurance was applied for defendant's agent was told that Stoner wanted insurance to cover his interest as mortgagee during foreclosure and redemption period; and that the actual owner was not known to Stoner, but the records showed the title to be in Bernice Hagaman, and the defendant's agent was notified of the filing of the conveyance from Bernice Hagaman to Fadden, and from Fadden to Jake Stoner; and that the appellant company, having written the policy with this knowledge on the part of its agent, could not avoid its liability by the provision of its policy in regard to a transfer of the title to the property. The opinion says on page 1223: ''It must be borne in mind that this suit is

brought by the plaintiff upon the policy which was issued. Plaintiff attached a copy of this policy to his petition and introduced the policy in evidence. This policy contains the provision in regard to change of interest or title referred to above. It was accepted and retained by Jake Stoner, and no objection was made by him, or by the plaintiff as his assignee, to any of its provisions. This is an action at law upon the policy itself, to enforce payment of the amount claimed due thereunder, and is not an action in equity to reform such policy. As this case is now presented to us, this court is powerless to modify or ignore any of the provisions of the contract contained in the policy, and the provision in regard to change of interest or title must be given full force along with all its other provisions.'' The opinion says further on page 1224: ''It appears without dispute in the evidence that the agent to whom it is claimed this notice was given is a soliciting agent of the defendant-company, and that there is nothing to show that he had any power or authority other than such as is ordinarily exercised by soliciting agents. It seems to be the established law of this state that knowledge which is brought to the soliciting agent of an insurance company in connection with the application for and issuance of insurance will be imputed to the company,'' citing authorities. It also said: ''It seems equally well established that knowledge on the part of a soliciting agent as to things which occur after the issuance of a policy will not be binding on the insurance company, and that no waiver or estoppel can be established against an insurance company because of notice to or knowledge of its agent in regard to violations of provisions of a policy which occur after it has been issued,'' citing authorities. It further says: ''It appears without dispute in the evidence in this case that the defendant's agent did not notify it of the transfers affecting the changes of title which the evidence shows to have occurred after the policy was issued. It is well established that a violation of a provision in regard to a change of interest or transfer of title will be sufficient ground to relieve an insurance company from liability. The defendant-appellant in this case pleaded the violation of this provision as a defense, and, in view of the record to which we have referred, the first ground of defendant's motion to dismiss plaintiff's action should have been sustained.''

There is no evidence in this case which tends to show that

Sullivan, the soliciting agent of the defendant, or any other person, ever gave the company notice of any change in the title until after the fire occurred. Sullivan being only a soliciting agent, facts coming to him after the issuance of the policy will not be held as notice to the company under this ruling. The policy in this case was the same as the policy in the Green case, issued upon the Iowa statutory form policy for fire insurance.

■■■ It is also claimed by the plaintiff in this case that the payment of the premium was made by Raitt to Sullivan; that the company accepted and retained the premium, and had not paid any of it back, and that hence the company could not now defeat the plaintiff without at least tendering back the premium.

In the Green case, the court further says, on page 1228:

"There is nothing in the record to show that any objection was made by the said mortgagee, Jake Stoner, or by any one in his behalf, in regard to the form of the policy, and there is nothing in the record to show that any knowledge was brought to the appellant-company in regard to any violation of any of the conditions of the policy prior to the time of the fire which destroyed the house which was insured." The Green case then says: "The weight of authority is to the effect that no foundation for a waiver or estoppel is furnished by the failure of the insurer to return the unearned portion of the premium where it did not acquire knowledge of the breach of condition until after loss and then denied liability." Then cited Houdeck et al. v. Merchants & Bankers Insurance Co., 102 Iowa 303, 71 N. W. 354; Kahler v. Iowa State Insurance Co., 106 Iowa 380, 76 N. W. 734. The court says: "The acceptance and retention of the premium by the appellant in this case did not, therefore, constitute a waiver or estoppel, and did not preclude it from claiming the invalidity of the policy because of the violation of any of the terms or conditions thereof." The Green case is decisive of this case.

■■■ So the discussion of further questions is not necessary, except that the record in this case shows in the amendment to abstract filed by the plaintiff, as follows:

"On the first trial plaintiff recovered a verdict for $4,694.70 and on appeal the judgment was reversed in 215 Iowa, at page 665, 246 N. W. 615.

"On the second trial plaintiffs recovered a verdict for $4,933.50 and on appeal the judgment was reversed in 218 Iowa, at page 720, 253 N. W. 821.

"On the third trial the jury disagreed.

"On the fourth trial plaintiffs recovered a verdict for $5,445.00. Judgment was rendered thereon and it is from such judgment that this appeal was taken."

The matters discussed herein necessitate that we reverse this case. We think it is about time this litigation is stopped. We agree with the sentiment expressed in the printed argument of the appellee that "there should be an end to this litigation." Of course he desired a particular end, and so does the other party. One or the other party to the suit is sure to object to whatever efforts we may make to end the litigation, but we can only enter such order ending it as in our opinion is proper.

Every possible question has been litigated; the defendant was entitled to a directed verdict below on the ground set out herein. We find that it is proper, and the thing that should be done is for this court to direct the district court to dismiss the case and enter judgment for the defendant, and sustaining the defendant's motion for instructed verdict. Section 12871 of the Code provides, among other things, as to the power of the court in such matters: "The court may reverse, modify, or affirm the judgment, decree, or order appealed from, or render such as the inferior court should have done." Under this section, in Book-hart v. Younglove, 207 Iowa 800, 218 N. W. 533, we directed the correction of judgment after allowing a credit. In Cram & Sons v. Central Trust Co., 205 Iowa 408, 216 N. W. 71, 73, we said: "The record presents, therefore, a proper case, in which we may reverse without order for new trial, under the rule that this court may render such judgment as the lower court should have done," citing section 12871; First Presbyterian Church v. Dennis, 178 Iowa 1352, 161 N. W. 183, L. R. A., 1917C 1005; McCarl v. Clarke County, 167 Iowa 14, 148 N. W. 1015; First Sav. Bank v. Edgar, 199 Iowa 1136, 199 N. W. 1011.

Hence, for the reasons herein given, this case is reversed, with directions to the district court of Union county, Iowa, to sustain the defendant's motion for directed verdict, and to enter judgment for the defendant.—Reversed.

KINTZINGER, C. J., and ALBERT, DONEGAN, and RICHARDS, JJ., concur.