First Presbyterian Church, Appellant, v. William Dennis, Executor, Appellee.

**WILLS: Requisites and Validity—Testamentary Dispositions—What Is Not.** An unconditional, written promise to pay a definite sum of money is not rendered testamentary (a) by the fact that the sum is not payable until after the death of the maker and his wife, and (b) by the fact that the sum promised is referred to in the promise *as a bequest.*

**WILLS: Contract to Devise or Bequeath—Formalities of Execution.** A valid agreement to devise or bequeath need not be executed with the formalities of a will.

**CONTRACTS: Consideration—Presumption from Writing—Insufficiency of Evidence to Overcome.** The *presumption* that an unconditional written promise to pay a definite sum of money was made on a sufficient consideration is not overcome by the facts:

(a) That the sum promised is referred to in the promise as a *bequest;* or

(b) That the written promise bears an indorsement by a third party to the effect that "the within bequest is provided for in a will of even date herewith;" or

(c) That the promisor executed a will and made provision for the payment of the promised sum, but later revoked the provision.

**WILLS: Construction—Bequests—Scope of Term—Contracts.** The term "bequest" does not necessarily imply a gift.

**CONTRACTS: Consideration—Presumption from Writing—Insufficiency of Evidence to Overthrow.** The *presumption* that an unconditional promise to pay a definite sum of money was made on a sufficient consideration, is not weakened, but strengthened and reinforced, by the fact that the promisor is a member and a strong and active adherent of the church organization to which the promise is made.

**EVIDENCE:**  Burden of Proof—Presumption of Consideration from
6  Writing.  He who is faced with a written promise to pay must
assume the burden of overthrowing the presumption of law that
the promise was made on a sufficient consideration.

**APPEAL AND ERROR:**  Review—Facts, Verdicts and Findings—
7  Total Absence of Evidence—Effect.  The plea that the verdict of
a jury or the finding of a court on disputed questions of fact is
conclusive on appeal, has no application when the record is bar-
ren of *any* evidence to support such verdict or finding.

**APPEAL AND ERROR:**  Reversal—Peremptory Direction as to Judg-
8  ment.  On reversal, a cause will be returned to the trial court
with peremptory order to enter the proper judgment, (a) when
the appeal is not from an order refusing a new trial, and (b)
when the decision on appeal disposes of every issue joined in
the pleadings.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

SATURDAY, JANUARY 20, 1917.

THE defendant is the executor of the will of John B.
Leigh, deceased.  The plaintiff filed a claim against the estate
of Leigh for the payment of a promissory note.  The claim
was contested by the executor, and upon trial to the court it
was rejected, and plaintiff appeals.—*Reversed and remanded.*

*Dawley, Jordan & Dawley,* for appellant.

*William Dennis, G. P. Linville* and *F. L. Anderson,* for
appellee.

WEAVER, J.—The instrument on which the plaintiff's
claim is based is in the following form:

"$500.   As a bequest I promise to pay the First Pres-
byterian church of Mount Vernon, Iowa, the sum of $500, to
be due and payable after the decease of both myself and my
wife, Elizabeth A. Leigh, without interest.   Dated at Mount
Vernon this 27th day of February, 1899.

"John B. Leigh."

On the back of this note there is written the following:
"The within bequest is provided for in a will of even date herewith. (Signed) C. M. Sessions."

This endorsement is not in the handwriting of John B. Leigh, and of the fact as to when and by whom written, and the circumstances thereof, there is no direct evidence.

To this claim the executor answered, denying the same, but admitting that both John B. Leigh and his wife, Elizabeth A. Leigh, mentioned in the note, died in the year 1914. Further answering, he alleges that the note was given without consideration, and that it is testamentary in character and is not executed or witnessed as required by law.

After hearing the evidence, the trial court found for the defendant, and dismissed the claim.

The plaintiff's evidence in chief consisted of the note itself and of evidence tending to show that the signature thereto was in the handwriting of John B. Leigh. On the part of the defense, the executor introduced the will of John B. Leigh, bearing date in the year 1906, and codicil thereto, executed in the year 1914. Paragraph 2 of this will is as follows:

"I give, devise and bequeath to the First Presbyterian Church of Mount Vernon, Iowa, the sum $500, to be paid after the death of both myself and wife, Elizabeth A. Leigh."

The codicil, so far as relevant, is in these words:

"I, John B. Leigh, of Mount Vernon, Linn County, Iowa, hereby execute this instrument as a codicil to my last will and testament. I hereby revoke and cancel the bequest made by me in my last will and testament to the First Presbyterian Church of Mount Vernon, Iowa, or to the trustees of such church."

The executor as a witness testified that he knew John B. Leigh in his lifetime, and that he also knew C. M. Sessions, who also is dead; that Sessions was a justice of the peace, who did more or less business for Leigh, and that the body of the note in suit and the endorsement thereon are in his

(Session's) handwriting.   The witness drew the will of 1906 and the codicil of 1914, and was permitted, over plaintiff's objection, to testify that, when this will was drawn, Leigh told him he had made a former will, in which was a bequest of $500 to the Presbyterian Church, and wished to make the same provision in the will then being prepared.   In rebuttal, plaintiff produced witnesses testifying, in substance, that Leigh had been a member or adherent of the local Presbyterian church from a time anterior to the date of the note; that a church building enterprise had been inaugurated about the year 1895 and continued over a considerable period; that during all this time Leigh was a member of the building committee, and was also one of the soliciting committee to raise the needed money; that some of the expense was paid by money borrowed on mortgage security, and that this debt was not finally discharged until the year 1902.   Leigh is said by some of the witnesses to have taken a very decided interest in the enterprise, being the most active member of the building committee, and also active in soliciting subscriptions.   It is also shown that, at or about the date of this note, there was a movement being made to pay off the debt or debts thus incurred, and that the church relied upon the note as one of its resources to meet its obligations and expenses.   The note, since its original delivery, has at all times been in the hands of the church, or of its proper officer or custodian.   The pastor of the church, living at the time, and to whom, some of the evidence tends to show, the note was first delivered, is dead.   There is no living witness who undertakes to speak of his own knowledge concerning the immediate circumstances attending the making and delivery of the note.

The court found that the plea of the want of consideration of the note had been sustained, and that the writing is testamentary in character, but invalid because not duly executed or witnessed, and that, if otherwise valid, it was revoked and rendered void by the codicil to the will of 1906.

I.   Following the order of argument pursued by counsel,

we will first consider whether the note in suit is upon its face testamentary in character.

This inquiry, we are quite clear, must be answered in the negative. It contains a clearly expressed "promise to pay" a definite sum of money. The fact that the payment was not to become due until the death of Leigh and his wife is not sufficient to give the instrument character as a will or testament, nor is it sufficient to deprive such instrument of its character as a promissory note. See Story on Prom. Notes, Sec. 27; *Hegeman v. Moon*, 131 N. Y. 462 (30 N. E. 487); *Carnwright v. Gray*, 127 N. Y. 92 (27 N. E. 835); *Martin v. Stone*, 67 N. H. 367 (29 Atl. 845); *Board of Trustees v. Noyes*, 165 Iowa 601. Nor can we see that the words, "as a bequest," which appear in this note, have any effect to change its otherwise apparent character as a promissory note or simple promise to pay. As, according to the terms of the instrument, the sum named therein would not become payable until the maker's death, these words may fairly imply his purpose or intent to make provision for such payment in his will. A failure to make such provision could of itself have no effect to discharge his promise to pay, or relieve his estate from liability, unless a sufficient defense thereto is found to exist upon other grounds. In other words, an unconditional promise to pay, made to mature at or after the death of the promisor, is none the less a present, valid and binding promise because, at the same time or in the same instrument, he expresses his purpose or makes the further promise to make testamentary provision for meeting and discharging his promise to pay. Such promise to pay, as we have seen by the authorities above cited, has none of the elements of a testamentary gift, and the instrument need not be executed with the formalities required in the making of a will. Even if the note contained a direct and express agreement to make a will, such agreement, if made upon sufficient consideration, would not have to be exc-

1. WILLS: requisites and validity: testamentary dispositions.

2. WILLS: contract to devise or bequeath: formalities of execution.

cuted with the formalities of a will to give it validity. Even oral contracts to make a will are frequently specifically enforced in equity, or made the foundation of valid claims at law. In other words, an agreement or promise is not testamentary simply because the party executing or making it undertakes, at some time in the future, to make a specified devise or bequest.

II. Does the evidence sustain the finding of the trial court that the note is without consideration?

As the promise is in writing, duly signed by the deceased, it follows that, under the rule prevailing in this state (Code Section 3069), we must, at the outset, give to plaintiff the benefit of the presumption that the promise

3. Contracts: consideration: presumption from writing: insufficiency of evidence to overcome.

of John B. Leigh was supported by a consideration, and the burden of sustaining the answer in this respect by a preponderance of the evidence is upon the executor. Indeed, the presumption of consideration attaches to a promissory note even at common law. 1 Randolph's Commercial Paper, Sec. 562. The rule thus stated is not seriously denied; but it is argued that the paper itself reveals the

4. Wills: construction: bequests: scope of term: contracts.

lack of consideration, because the promise to pay is introduced or prefaced by the words, "as a bequest," and because of the memorandum endorsed thereon and signed by a third person, to the effect that the "within bequest is provided for in a will of even date herewith." It is said that the words, "as a bequest," mean no more than would the words, "as a gift," or a promise to make the church a gift by will. This contention unduly limits the scope and definition of the word bequest. We may, for the purposes of this case, concede that ordinarily it has reference to a testamentary provision, by which a person or legatee named becomes entitled to receive certain money, property or other benefits from the estate of a testator. Ordinarily, also, when technically employed, it means a testamentary disposition of the testator's personalty.

In one sense of the word, it is, as counsel say, a gift of personalty by will; but the word "gift" is not here used in the narrow sense of a voluntary act of charity or love or good will, which the testator is at liberty to extend or withhold, and for which no legal consideration exists. It may be, and very often is, applied to testamentary benefits bestowed or provided for in a will to discharge or satisfy a valid promise or obligation incurred by the testator in his lifetime. If a man may enter into a valid promise to dispose of his entire estate by will, surely he may make a valid promise to provide in his will for the application of a fraction of his estate to the payment of an obligation which, on sufficient consideration, he has taken upon himself to perform. It follows that, if a man may make a valid promise for the payment of a certain sum of money at or after his death, then his promise to leave in his will a legacy to the promisee to cover or discharge the debt is not a mere promise to make a gift pure and simple, and therefore without consideration. So long as the promise to make a bequest may be a valid legal obligation, then the use of the word "bequest," as used in the note, operates not in the least to overcome the presumption of consideration which our statute and practice attach to a written promise to pay.

Nor is this situation affected by the words endorsed on the note over the signature of the man Sessions. It is true he speaks of the "within bequest," but his characterization of the instrument, and the language or word employed by him, constituted no part of the written promise by Leigh. It is at most a memorandum recording the fact that on that date a will was made in accordance with the promise or suggestion embodied in the note. Still presuming a consideration for the promise, neither the subsequent revocation of the will nor the execution of another will nor the final revocation of the bequest by codicil could affect the validity of the note, or its enforceable character when matured by the death of the maker.

The case of *Cover v. Stem,* 67 Md. 449, cited by the appellee, does not support the position taken by him.   The instrument there being considered was, at most, a mere order or request directed to the maker's "estate or executor" to pay a sum of money to the claimant.   In the case at bar, we have an unconditional promise to. pay.   The distinction is clearly pointed out in the opinion in the very case cited.   It is there said that, to uphold the instrument sued upon, "there must be terms employed to create a *debitum in praesenti,* though the *solvendum* be *in futuro.*   It would seem to be clear that the relation of debtor and creditor must be created and subsist in the lifetime of the parties, though the time of payment be deferred until after the death of one of the parties."

The case at bar aptly fills the requirement of the rule thus stated.   The note, as we have said, is an explicit promise to pay a certain sum of money, though the day of payment was postponed until the maker's death.   From the moment of its execution and delivery, the relation between him and the payee was that of debtor and creditor.   This fact takes the case out of the category of *Cover v. Stem,* and other cases of that class.

The case of *Burlington University v. Barrett,* 22 Iowa 60, 72, also cited by appellee, affords little or no light on the case before us.   There, no valid will was in fact ever made, and the paper on which the claim was based was construed, and, in so far as it contained an explicit promise to pay, was upheld, as a valid contract, and to that extent enforced.   It is true that the court there gives, and properly, some weight to the use of the word "bequest;" but the circumstances there considered are not, in any essential respect, parallel to those presented by this record, and the decision there rendered is not a controlling precedent for us in disposing of this appeal.

*In re Estate of Longer,* 108 Iowa 34, goes no farther than to hold that a writing which is otherwise in all respects sufficient to dispose of the estate of a person after death, and is duly signed and witnessed, is none the less a valid will be-

cause it is inartificially drawn, and is prefaced by the words, "I agree to will," it being held that the clear effect of these words was the equivalent of "I do will."

The cases which hold against the position of the appellee as to the character of the instrument in suit, are numerous, but we cannot stop to review them at length. We call attention, however, to the following. In *Hegeman v. Moon*, 131 N. Y. 462 (30 N. E. 487), Cornelia Hegeman gave Joseph Hegeman a writing, directing her executors, one year after her death, to pay a stated sum of money to Joseph as balance due him for advances made. After her death, plaintiff filed his claim against her estate, and payment was refused and the claim contested on the ground that the written promise was testamentary only. The objection was held not good, the court saying:

"The instrument is in its nature and substance a promissory note payable one year after the maker's death."

A writing in which the maker says, "I promise to pay Nellie F. Sanborn, or order, $1,000, to be allowed at my decease," has been held by the New Hampshire court to be a promissory note, and to import a sufficient consideration. *Martin v. Stone*, 67 N. H. 367.

In the case of *Garrigus v. Home F. & F. M. Society*, 3 Ind. App. 91 (28 N. E. 1009), the Indiana court had to deal with a written instrument as follows:

"Desiring to advance the cause of missions, and to induce others to contribute to that purpose, I promise to pay to the order of the 'Home, Frontier and Foreign Missionary Society of the Church of the United Brethren in Christ' the sum of $600 . . . said sum and interest to be paid out of my estate one month after my death."

When presented as a claim against the estate, its allowance was resisted on the same grounds pleaded in the instant case; that is, that it was a testamentary instrument, and without consideration. Both defenses were overruled. The court, conceding that there are authorities supporting the

position taken by the defense, holds to the other line of precedents, as indicating the better and more reasonable rule. The court says:

"It does not attempt a testamentary disposal of property, but promises expressly to pay a sum of money to a party named; and, being in the form of a contract to pay money, may be said to import a consideration. It is none the less a promissory note because made payable after the death of the maker."

In its treatment of the authorities and in the conclusions reached, the case just cited is quite parallel with our own recent case of *Board of Trustees v. Noyes,* 165 Iowa 601, as well as *Brokaw v. McElroy,* 162 Iowa 288. See also *Wolfe v. Wilsey,* 2 Ind. App. 549 (28 N. E. 1004).

We must hold, therefore, that the note sued upon in this case does not disclose or show anything which takes from it the benefit of the presumption of consideration.

III. The only remaining material question is whether there is in the record any evidence on which the trial court could properly find that the presumption of consideration to support the promise to pay is overcome by the defendant.

5. CONTRACTS:
consideration:
presumption
from writing:
insufficiency of
evidence to
overthrow.

On the trial, appellee rested his defense wholly upon the language of the instrument, the endorsement thereon, the making of the will or wills by the deceased, and the subsequent codicil revoking a bequest which he had made to the church. If we omit the executor's recitation of his conversation with Leigh when the last will was drawn—some six years or more after the giving of the note,—this constituted the entire evidence in resistance to the claim. The conversation referred to may, for the purposes of the case, be treated as competent testimony, though we do not so decide; but there is in it nothing which in any manner adds to or takes from the obligation expressed in the note. The alleged want of consideration, as

we have already held, is not to be found either in the note itself nor in the fact that Leigh at one time made provision in his will for its payment, or that he afterwards revoked such provision. By reason of the death of both Leigh and his wife, and of the pastor of the church and of Sessions, who drew the paper, as well as by reason of the departure or absence of others who might be able to throw some light upon the transaction, there is, as we have before noted, an entire absence of direct evidence concerning it, unless it be in the recollection of the pastor's widow, who remembers that her husband brought the note to their home about the time it was made, and that it was then, or soon after, delivered to the proper officer of the church, and has ever since been held by or for the church. Some side light is afforded by evidence that Leigh was a member or adherent of the church; that he had shown an active interest in the building of a house of worship; that the burden of debt thereby incurred had not been fully removed from the church at the time the note was given; that he took an active part in soliciting and raising money for this enterprise; and by the fact that the record is barren of any testimony that he ever demanded a return or cancellation of the note, or notified the church of any purpose to repudiate the obligation which he had thereby assumed. In so far as this testimony has any bearing upon the issues joined, it tends to strengthen the presumption of consideration rather than to rebut it. A church society is a voluntary organization, whose members are associated together not only for religious exercises but also for the purpose of maintaining and supporting its ministry and providing the conveniences of a church home and promoting the growth and efficiency of the work of the general church of which it forms a co-ordinate part. No one member can, or is expected to, bear all the financial burdens of the society; there are no public rates or taxes which it can rely upon for this purpose; but all are supposed to unite, each with the other

contributing his share in some reasonable proportion to his ability to pay.  The promise of a member or friend of the society to pay a stated sum in aid of the common purpose is not, in any just sense, the promise to make a mere gift.  Each member or adherent, whether rich or poor, gives or pays not alone in consideration of the benefits to be derived from the maintenance of the church and promoting its effective work, but each makes his promise or subscription upon the faith that others will unite with him in carrying the financial burden, and with the expectation that his example in this respect will stimulate or induce others to give similar assistance.  It is not unreasonable, therefore, to say that the unconditional written promise of a member to pay a stated sum of money to the church to which he is at least morally pledged to render service and support, carries with it a presumption of consideration, in addition to the presumption attaching generally to every written promise to pay.  Such is the clear effect of the decision in *Collier v. Baptist Ed. Society*, 8 B. Mon. (Ky.) 68.  Quite in point, too, is the case of *Trustees v. Cowls*, 6 Pick. (Mass.) 427, where it is held that a subscriber to the support of a school could not avoid his promise to pay by a plea of want of consideration.  The court there holds that, while it was true that the subscriber received no financial consideration to himself, yet it was sufficient to create a consideration that the party to whom the money was to be paid assumed an obligation to apply the money to the purposes for which it was given.  True, there is in this case no direct evidence that this note was given in aid of a fund to pay off the debts of the plaintiff church, or that it was used as an inducement to others to join in such enterprise,

6. EVIDENCE: burden of proof: presumption of consideration from writing.

or that any other specifically named person relied thereon or was thereby induced to contribute or subscribe; but, on the other hand, there is no evidence that such was not its origin, use or purpose.  The burden of showing that the note

was not given for this or any other legitimate consideration was upon the defendant, and we find nothing whatever in the record to justify that conclusion.

It is finally argued for appellee that the trial court's finding that there was no consideration for the note should be given the effect of a verdict by the jury, and that this court is bound thereby. The point would not be without merit if the record disclosed any testimony to support the finding. In the absence of such support, neither the court's finding nor the verdict of a jury is immune against challenge on appeal. The mistake of the appellee in argument and of the trial court in its findings is in the failure to give due effect to the presumption of consideration in the paper sued upon, and, in effect, erroneously shifting upon plaintiff the burden which the law places upon the defendant.

7. APPEAL AND ERROR: review: facts, verdicts and findings: total absence of evidence: effect.

The appeal in this case is not from an order refusing a new trial, and our conclusions upon the law dispose of every issue joined in the pleadings. The record presents, therefore, a proper case in which we may reverse without order for new trial (Code Supp., 1913, Section 4139).

8. APPEAL AND ERROR: reversal: peremptory direction as to judgment.

The judgment below is reversed and the cause remanded to the district court, with directions to enter judgment allowing plaintiff's claim against the estate of John B. Leigh for the amount of the note with interest from the date of the rejection of such claim by the executor, and for costs.—*Reversed and remanded for judgment.*

GAYNOR, C. J., EVANS and PRESTON, JJ., concur.