F. W. TAYLOR, Administrator, Appellee, v. MARVIN BURGUS, Appellant.

No. 43077.

OCTOBER 23, 1935.

PETITION FOR REHEARING DISMISSED FEBRUARY 6, 1936.

Gibson & Stewart, and E. K. Jones, for appellant.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellee.

ALBERT, J.—Under the contention of the defendant there is but one question for decision in this case.

The defendant made a motion to direct a verdict, at the close of all the testimony, which was overruled, and, to the action of the court in overruling this motion for a directed verdict, the defendant excepted. The correctness of this ruling is the only question raised in the case. It is suggested, however, that the defendant, not having filed a motion for a new trial, cannot be heard on the question he now raises.

The general rule governing motions for new trial, as set out in Stewart v. Equitable Mut. Life Assn., 110 Iowa 528, 81 N. W. 782, is as follows: ''The purpose of a motion for a new trial is to bring before the court errors which, without it, would not be called to its attention. [Citing cases.] Surely, filing a motion of this kind does not waive errors to which the court's attention has been previously directed and exceptions saved. Having been once pressed for correction, the duty of the litigant has been discharged, and he is under no obligation to demand reconsideration. This is the reason for the statute in authorizing review of such errors in the absence of any motion.''

So, as applied to the facts before us, the question of the sustaining or overruling of the motion to direct a verdict was squarely called to the attention of the court and passed upon by it and exceptions were taken from the ruling. A motion for a new trial, under such circumstances, is not required.

For reasons hereinafter set out, a summary of the facts in this case is all that is necessary.

The accident out of which this suit grew occurred on March 18, 1934, about eleven o'clock, or a little later, in the evening. On this Sunday evening these four young people, Marvin Burgus, Loren Taylor, Margery Abel, and Leona Morrow, were riding in the defendant's car. They drove west from Osceola to

Creston, where they attended a picture show, and started to return home to Osceola about ten thirty or eleven o'clock at night. The car was a Chevrolet sedan owned by the defendant. When they left Creston, the defendant was driving and Leona Morrow was sitting beside him in the front seat. The deceased, Loren Taylor, was sitting on the right side in the back seat, and his company, Margery Abel, was sitting at his left. After they had driven some distance toward Osceola, the defendant changed places with Leona Morrow, and she thus drove the car to the scene of the accident. The road on which they were driving was known as highway No. 34. It is a paved highway, with pavement 18 feet wide, and dirt shoulders on either side. Near the city limits of Osceola there is a bend in the road to the right, and at the city limits there is a rise in the pavement which is referred to as a "hill". At or about the foot of this "hill" the curve ends, and the pavement continues thence practically straight east and becomes one of the streets of the said city. At the foot of the south shoulder, at or near the scene of the accident and running parallel to the pavement, is a ditch about two feet in depth. Running south from the pavement a little farther on is a north and south street, designated in the record as Twenty-eighth street. To the north of the pavement, and about 75 feet therefrom, is a building belonging to the state highway commission. This building is at or near the foot of the "hill" and in the neighborhood of 100 feet west of Twenty-eighth street.

At the time in question this car came over the "hill" at the rate of 45 or 50 miles an hour. As it reached the point approximately opposite the highway commission building, the car ran off the paving and shoulder and into the ditch above referred to. It followed this ditch for something like 100 feet, to what is referred to in the record as a flume. This flume is of concrete, and is a spillway constructed to the south of the pavement to let the water run off. It slopes to the south, and the water is dumped on a concrete slab at this point and flows from thence south in a ditch or depression. This ditch or depression is something like 18 inches to two feet deep. The spillway seems to be approximately on the west line of Twenty-eighth street. As this car progressed to the east, it, at least partially, struck the said spillway and ran into the ditch below. It turned end over end, and threw all these young people from the car, and this resulted

in the death of Loren Taylor. The car came to rest some 12 or 15 feet south of the pavement, on highway No. 34.

A jury might find from the record that, commencing at a point approximately at the top of the "hill", on the north side of the pavement, there was an automobile track extending to the east to a point opposite the west line of the highway commission building; that the shoulder was soft, and at the latter point the tracks veered abruptly to the right and crossed the pavement and went into the ditch on the south side of the pavement, and followed along the course of this car to the point of the accident. Where these tracks crossed the pavement, there were evidences of burned rubber and the skidding of wheels. Whatever car made this track from the point at the top of the hill to the place where it crossed the pavement, the track could have been made only by a car with the two north wheels off the pavement and the two south wheels on the pavement.

The only eyewitness to this accident, aside from the four occupants of the car, was a young man who had driven his car off the pavement near the highway commission building. His car was headed west, and he drove to this point about the time the defendant's car was coming over the hill. When he stopped his car, he shut off his lights, and his testimony as to what he saw is based wholly on what he saw of the lights of the defendant's car coming in his direction, and he testifies that he heard the car skid. There is testimony of two witnesses as to conversations with the defendant after the accident, and to one of them he said that the car was being driven "like hell", and to the other that the car was being driven "too fast".

Of course, it is to be remembered that this is what is known as a "guest case" and the defendant is liable, under the statute, only for "recklessness". The motion to direct a verdict went alone to this question, to wit, that there was no evidence of recklessness shown, and therefore a verdict should be directed for the defendant.

■■■ At this point we take up the statements of the defendant in his brief and argument. He asserts that under no circumstances does he want a new trial. He asks this court to rule that the motion for a directed verdict should have been sustained, and then that this court enter judgment here dismissing the plaintiff's case, or that the case be reversed and remanded to the district court with directions to enter judgment for the defendant.

This is the first time that this question has ever been raised in a case of this kind. There are some cases in which, after a second or third trial, we have made an order of this kind. There are one or two cases in which the record has been in such shape that it was conclusive that upon a retrial no other result could be reached, and therefore we have made the kind of an order asked for in this case. It is fundamental that a general order of reversal cancels the district court judgment and sends the case back for a full retrial of the entire case. Landis v. Interurban Ry. Co., 173 Iowa 466, 154 N. W. 607; Owens v. Norwood-White Coal Co., 181 Iowa 948, 165 N. W. 177; Hawthorne v. Delano, 183 Iowa 444, 167 N. W. 196. Under such circumstances the case stands for retrial the same as though there has been no former trial. In Holland Furnace Co. v. Pope, 204 Iowa 737, 215 N. W. 943, it was held that, where the facts were stipulated and the court erroneously decided the law question, upon a reversal it was proper for this court to direct the trial court to enter judgment for the appellant; and also that, where there was a trial to the court without a jury and the court erred in its judgment, the case might be reversed, with directions to enter judgment for the appellant. McCarl v. Clarke County, 167 Iowa 14, 148 N. W. 1015; First Presbyterian Church v. Dennis, 178 Iowa 1352, 161 N. W. 183, L. R. A. 1917C, 1005. With certain exceptions not involved in the present case, it has never been the rule or practice of this court, in reversing a case, to enter judgment here or to send the case back to the district court with directions to enter judgment; and, if we should rule in this case that the lower court should have directed a verdict for the defendant, under the usual course of practice the case would be returned to the district court for a new trial. This being the usual course of practice in such cases, we see no occasion for departing therefrom. But the defendant insists that under no circumstances does he want a new trial, and, this being his attitude and urgent request, we forego a ruling on the motion to direct, and hold that the case, under the circumstances here, should be affirmed.—Affirmed.

KINTZINGER, C. J., and PARSONS, DONEGAN, and RICHARDS, JJ., concur.