# In the Iowa Supreme Court

No. 24–0205

Submitted February 19, 2025—Filed March 21, 2025

**Jahn Patric Kirlin** and **Sara Louise Kirlin,**

Appellants,

vs.

**Barclay A. Monaster, Christian William Jones,** and **Physicians Clinic Inc.** d/b/a **Methodist Physicians Clinic – Council Bluffs,**

Appellees.

Appeal from the Iowa District Court for Pottawattamie County, Michael D. Hooper, judge.

The plaintiffs in a medical malpractice action appeal the summary judgment granted to the defendants based on a failure to timely certify experts. **Reversed and Remanded.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Kelly N. Wyman of Wyman Law, Council Bluffs, and Dean T. Jennings of Jennings Law Firm, Council Bluffs, for appellants.

Robert A. Mooney and Kalli P. Gloudemans of Mooney, Lenagham Westberg Dorn, LLC, Omaha, Nebraska, for appellees Christian Williams Jones and Physicians Clinic Inc.

Frederick T. Harris, Theodore T. Appel (until withdrawal), and Georgia R. Rice of Lamson Dugan & Murray LLP, West Des Moines, for appellee Barclay A. Monaster.

**Mansfield, Justice.**

This is the second time this medical malpractice case has been before us. Unfortunately, we must reverse and remand once again. The question before us is what happens to a section 668.11 expert certification deadline when the deadline lapses while a case is on appeal. If there is a reversal and remand, does the old deadline spring back in place minus a tolling period? Or if the trial scheduling discovery plan contains an alternative default deadline, does that deadline now control?

We conclude that we need not answer the question today. Both positions are plausible. We conclude that the district court abused its discretion in not finding "good cause" for the plaintiffs to make expert certifications that adhered to the *second* deadline but not the *first*. Not only was there uncertainty about which deadline applied but the record also reveals a lack of prejudice to the defendants, the plaintiffs making good-faith efforts to litigate the case, and the defendants' prior communication of a different position to the plaintiffs. Together, these considerations add up to an abuse of discretion in denying the plaintiffs their day in court. Accordingly, we reverse the judgment of the district court dismissing this case and remand for further proceedings.

### I. Background Facts and Procedural History.

**A. The Alleged Malpractice.** We recite the facts as alleged by the plaintiffs. Jahn Kirlin is a thirty-seven-year-old man. Beginning on April 1, 2019, Kirlin experienced a sudden and continuous significant right-side neck pain, intense headaches, and pressure behind his right eye. Dr. Christian William Jones, a family physician with Methodist Physicians Clinic (MPC), began treating Kirlin for these symptoms on April 4. Dr. Jones recommended some pain

management medications and a pain management referral. He suggested an MRI would be necessary if symptoms did not improve.

On April 12, Dr. Jones was notified that the head and neck pain were continuing with no relief. The office stated that it was too late in the day on a Friday to order the MRI and that it would be ordered on Monday, April 15.

On Monday, Dr. Barclay Monaster—another family physician—took charge of Kirlin's care, having returned from a leave of absence after undergoing treatment for alcohol abuse. Dr. Monaster refused to order an MRI before seeing Kirlin in person. Kirlin scheduled an appointment for 1:30 p.m. At that time, Dr. Monaster refused to order the MRI, emphasized a $3,000 test was not necessary, ordered a prescription for steroids, and suggested Kirlin could continue his chiropractic care and follow up at the end of the week.

On the next day, April 16, Kirlin was receiving treatment from his chiropractor and immediately experienced stroke symptoms after an adjustment of his neck. Kirlin was transported by ambulance to Jennie Edmundson Hospital and eventually to the University of Nebraska Medical Center. It was confirmed that Kirlin suffered bilateral distal cervical vertebral artery dissections with high-grade stenoses and small thrombus in the proximal basilar artery, with permanent and irreversible damage.

The plaintiffs allege that some combination of MPC, Dr. Jones, and Dr. Monaster changed, altered, or made deliberate omissions on Kirlin's medical records; the medical records do not reflect an appointment for Kirlin on April 15. The plaintiffs further allege that Dr. Monaster was intoxicated at the time of the appointment with Kirlin on April 15. They allege that Dr. Monaster was arrested and later pleaded guilty to operating a motor vehicle while intoxicated, second offense, on April 16. Shortly thereafter, according to the plaintiffs, Dr. Monaster

reentered inpatient treatment for alcohol abuse. Kirlin is no longer able to work his previous job as a sheriff's deputy and has retired.

**B. Litigation Leading Up to the Prior Appeal.** On September 11, 2020, Jahn and Sara Kirlin sued MPC, Dr. Jones, and Dr. Monaster in the Pottawattamie County District Court. We described the ensuing events in our previous appellate opinion:

> The Kirlins timely filed a section 147.140 certificate of merit affidavit on October 2, signed by Dr. David Segal, a board-certified neurosurgeon. The Defendants challenged the certificate on the basis that Dr. Monaster is a family physician and Dr. Segal was not board-certified in family medicine. *See* Iowa Code §§ 147.139(1) (requiring the affiant to be "licensed to practice in the same or a substantially similar field as the defendant"), .139(3) ("If the defendant is board-certified in a specialty, the [affiant must be] certified in the same or a substantially similar specialty . . . ."), .140(1)(*a*) (requiring that the expert affiant "meet the qualifying standards of section 147.139"). Before the district court could issue a ruling on those motions, however, the Kirlins voluntarily dismissed their petition without prejudice under Iowa Rule of Civil Procedure 1.943.
>
> The Kirlins refiled their petition on April 14, 2021, and provided a new certificate of merit signed by Dr. Brian Smith—board-certified in family medicine—who opined that each defendant in the second case breached the standard of care.

*Kirlin v. Monaster*, 984 N.W.2d 412, 414 (Iowa 2023) (alteration and omission in original) (footnote omitted).

At this point, the defendants sought dismissal of the refiled action. They maintained that the Kirlins' voluntary dismissal of their initial lawsuit and subsequent refiling could not overcome the fatal defect in their initial section 147.140 certificate of merit. The district court agreed with the defendants and entered summary judgment in the refiled action.

**C. Our Prior Decision Reversing Dismissal and Remanding.** On appeal, we reversed and remanded. *See id.* at 413. We recognized the plaintiffs' "absolute

right" to voluntarily dismiss their petition pursuant to Iowa Rule of Civil Procedure 1.943. *See id.* at 416. We then concluded,

> When the Kirlins . . . refiled their suit, section 147.140 applied anew, and the Kirlins could not have relied on a certificate of merit from a previously filed and dismissed case to satisfy the statute any more than the Defendants may now rely on such a certificate to defeat the refiled petition. The district court erred as a matter of law when it granted summary judgment based only on the certificate of merit affidavit signed by Dr. Segal and provided in the dismissed case.

*Id.* at 417.

**D. Activities in the District Court Following Remand.** Our procedendo issued on February 20, 2023. On February 21 and again on March 7, the Kirlins' counsel emailed proposed trial scheduling and discovery plans (TSDP) to counsel for the defendants. They did not receive a response. Meanwhile, a notice came from the district court advising the parties that a civil trial setting conference with court administration would occur on March 30. The notice also required the parties to file a TSDP before the conference.

Apparently, the conference took place on March 30. However, there was no agreement then as to trial date because the defendants contended that the trial would now require two weeks rather than one week as had been previously ordered before the appeal. The parties also could not reach an agreement on a new TSDP. In addition, both sides indicated they favored setting "dates certain" for expert disclosures, although no dates were agreed upon. Therefore, a hearing before the district court was set for April 4.

On April 4, the district court ordered a seven-day jury trial to commence on March 18, 2024. The court did not enter a new TSDP or new dates for expert disclosures.

**E. The Defendants' Motions for Summary Judgment Based on Plaintiffs' Asserted Noncompliance with Iowa Code Section 668.11.** On July 31, 2023, the defendants moved for summary judgment again. The theory behind these motions was that the Kirlins had missed the deadline for certifying their experts under section 668.11 and without expert testimony, their case was fatally deficient. The defendants argued that when the district court granted the defendants' earlier motion for summary judgment on January 18, 2022, twenty-nine days remained until the Kirlins' deadline for expert certifications.

The original TSDP called for the plaintiffs' expert disclosures to occur 210 days before trial "unless the Iowa Code requires an earlier designation date (*see, e.g.*, Iowa Code section 668.11)." Section 668.11(1) requires the plaintiff in a professional liability case to certify their experts "within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure." Iowa Code § 668.11(1) (2020). Thus, the plaintiffs' original expert certification deadline fell on February 16, 2022, or twenty-nine days after the court granted the defendants' first motion for summary judgment.

According to the defendants, this meant that when the case returned to district court following procedendo, the Kirlins had twenty-nine days left, or until March 21, 2023, to certify their experts—a deadline that the Kirlins had missed. In the defendants' view, the failure of the court to enter a new TSDP meant that the old one was still in effect.

After receiving the defendants' summary judgment motions, the Kirlins promptly submitted their expert disclosures and also resisted the motions. They argued that in light of the earlier summary judgment, the appeal, and our reinstatement of the case, the section 668.11 deadline no longer governed. In

their view, the section 668.11 deadline had come and gone while the case was on appeal, during which time the district court lacked jurisdiction. The Kirlins pointed out that they could not have filed section 668.11 certifications in a case pending on appeal. Therefore, the Kirlins insisted, the default deadline for expert disclosures under the original TSDP applied. That default deadline was 210 days before trial, or August 21, 2023—a deadline the Kirlins had met.

Alternatively, the Kirlins argued that they had good cause for not meeting the section 668.11 deadline. They maintained that such cause existed based on confusion as to what the deadlines were and whether the section 668.11 deadline still applied after remand, lack of prejudice to the defendants, and the Kirlins' continued efforts to prosecute the case. As they put it, "At worst, this is a good faith misunderstanding, accident, mistake or excusable neglect because no clear deadline applied after remand was ordered."

The defendants provided their own expert certifications and disclosures on August 14. Then, on November 17, the district court granted summary judgment in the defendants' favor. The district court agreed with the defendants that the situation should be treated as if the prior summary judgment had never been granted and the appeal had never occurred. *See Taylor v. Burgus*, 262 N.W. 808, 810 (Iowa 1935); *Sleeper v. Killion*, 164 N.W. 241, 245 (Iowa 1917). This meant that the Kirlins had only twenty-nine days to provide expert certifications when the case returned to district court via procedendo. The court also rejected the Kirlins' good cause argument:

> Having considered the factors, the Court finds Plaintiffs' disclosure is well beyond the deadline, has limited Defendants in their consultation and preparation with expert witnesses, and there is no evidence that the misunderstanding of the law is due to the conduct of defense counsel. As such, the Court finds that good cause to extend the time for disclosure does not exist in this case. Plaintiffs' position is unsupported by law, and rather than seek clarification

as to whether the section 668.11 deadline continued to apply, they simply ignored it.

This appeal followed.

## II. Standard of Review.

We review a district court's interpretation of Iowa Code section 668.11 for errors at law. *Jorgensen v. Smith*, 2 N.W.3d 868, 873 (Iowa 2024). We review a district court's refusal to grant a party's requested departure from section 668.11's requirements for abuse of discretion. *Hantsbarger v. Coffin*, 501 N.W.2d 501, 505 (Iowa 1993) (en banc). "A trial court has broad discretion in ruling on such matters, and the exercise of that discretion will ordinarily not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable." *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989).

## III. Legal Analysis.

The district court ruled that the effect of our reversal of its dismissal order was to leave the pre-dismissal expert deadlines in place, after deducting the time that had elapsed between its dismissal order and our procedendo. While this was a plausible way to reconcile Iowa Code section 668.11 with the events of this case, it was not the only way. We bypass the question of whether the Kirlins' expert disclosures complied with section 668.11 and the original TSDP. Instead, we conclude that the district court abused its discretion in not finding good cause for the Kirlins to make their expert certifications and disclosures on August 8, 2023—223 days before the trial of this case.

**A. Iowa Code Section 668.11(2) and the Good Cause Exception.** Iowa Code section 668.11(2) provides, "If a party fails to disclose an expert pursuant to subsection 1 . . . , the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown."

We have applied this code provision before. In *Hantsbarger v. Coffin*, we said, "In determining whether good cause exists for granting plaintiffs' request to be excused from complying with the section 668.11 time limit, we believe the district court could have properly considered the seriousness of the deviation and defendant's prejudice or lack thereof." 501 N.W.2d at 505. We also made the following observation: "While we do not suggest that opposing counsel must act as his or her 'brother's keeper,' we believe it is appropriate to consider defendant's counsel's actions, or lack thereof, in determining good cause for granting plaintiffs' request for relief." *Id.* at 505–506.

In *Hantsbarger*, we decided that the district court had abused its discretion in excluding certain expert witnesses from a medical malpractice case. *Id.* at 503. The plaintiffs—while timely disclosing the experts' names—had not disclosed their qualifications and the purposes for calling them. *Id.*; *see* Iowa Code § 668.11(1) (requiring this information). Once the defendant moved to bar their testimony, the plaintiffs provided this information. *Hantsbarger*, 501 N.W.2d at 503. We also noted that "[d]efendant was not prejudiced, plaintiffs were ready with their experts, and [plaintiffs] had a good record of complying with discovery in this case." *Id.* at 506.

By contrast, we found no abuse of discretion when the district court refused to allow late expert disclosures in *Nedved v. Welch*, 585 N.W.2d 238, 239 (Iowa 1998) (per curiam). There, the plaintiffs did not file any sort of designation until three months after the section 668.11 deadline had run. *Id.* at 240. The plaintiffs offered a "questionable reason" for the delay, which was "contradicted and without any evidentiary support." *Id.* at 240–41. Lack of prejudice was the only consideration in the plaintiffs' favor, and we held that it was not enough by itself. *Id.* at 241.

We also upheld a district court's refusal to allow an untimely certification in *Donovan v. State*, 445 N.W.2d at 767. The plaintiffs' section 668.11(1) certification had been due in mid-May. *Id.* at 765. In June, the defendant filed a motion to compel answers to expert interrogatories. *Id.* The motion pointed out that the plaintiffs had not yet identified an expert despite the expiration of the 180-day deadline in section 668.11. *Id.* Even then, the plaintiffs did not submit a certification. *Id.* Finally, after the defendant filed a motion for summary judgment in mid-August, the plaintiffs designated two experts a month later. *Id.* at 765–66. The court found that this was untimely and sustained the motion for summary judgment. *Id.* at 765. We concluded that there was no abuse of discretion, noting that the excuse offered by plaintiffs' counsel was that he had been attempting to get the assistance of more experienced counsel, although at this time, the section 668.11 deadline "had run several months previously." *Id.* at 766.

And in *Hill v. McCartney*, 590 N.W.2d 52, 54 (Iowa Ct. App. 1998), the court of appeals held that the district court did not abuse its discretion in denying a motion to extend the expert deadline in a dental malpractice case. The plaintiff filed her motion long after the deadline and one month before trial. *Id.* As the court of appeals observed, "In determining whether good cause exists for granting plaintiff's request to be excused from complying with the section 668.11 time limit, the court considers three factors: (1) the seriousness of the deviation; (2) the prejudice to the defendant; and (3) defendant's counsel's actions." *Id.* at 55. Although the delay was severe, there was no indication the plaintiff was unaware of or confused about the deadline. *Id.* Instead, she argued that "the fact she has been unable to locate an expert to assist her [gave] her good cause to have the deadline extended," and she sought "additional time not only to

designate an expert, but to locate one as well." *Id.* As the court of appeals put it, "For nearly four months [the plaintiff] knew she did not have an expert to assist her and she did nothing." *Id.* Furthermore: "Defense counsel specifically inquired whether Hill intended to call an expert witness at trial." *Id.*

Guided by this caselaw, we turn to the present case. We believe the relevant factors show that the district court abused its discretion in not allowing the Kirlins' expert certifications. We consider the following: (1) the existence of uncertainty and confusion as to the proper deadline after appeal and remand, (2) the lack of prejudice to the defendants, (3) diligence by the plaintiffs in pursuing their case, and (4) defense counsel's actions.

**B. Uncertainty and Confusion as to the Expert Disclosure Deadline Following Appeal and Remand.** As we have already noted, in determining whether good cause exists for a failure to comply with the section 668.11(1) deadline, the district court may properly consider "the seriousness of the deviation." *Hantsbarger*, 501 N.W.2d at 505. The defendants treat "the seriousness of the deviation" as a simple question of how much time lapsed after the section 668.11(1) deadline before the plaintiffs certified their experts. We think this reads "deviation" too narrowly. Missing a clear deadline is different from missing an ambiguous one while adhering to the deadline that you *thought* applied.

At the beginning of this case, the expert certification deadline was clear. Section 668.11(1) applied and the Kirlins had 180 days from when the defendants answered—or until February 16, 2022—to provide their certifications. *See* Iowa Code 668.11(1)(*a*). But then there was a grant of summary judgment and an appeal. The defendants acknowledge that after January 18 of that year, the Kirlins could be excused for not filing those

certifications because the district court had granted summary judgment to the defendants.

Still, why did the clock stop on January 18? On February 1, the Kirlins filed a motion for reconsideration under Iowa Rule of Civil Procedure 1.904(2). The case was still ongoing, and the district court still had jurisdiction. The district court didn't deny the motion for reconsideration until February 23, at which point the original section 668.11 deadline had passed. Technically, therefore, the Kirlins could have made the expert certifications by the original February 16 deadline before appealing. The district court still had jurisdiction over the case, and there was the possibility that it would reconsider its ruling.

The point we are making is this: the defendants' position requires an adjustment based on a judgment call. The defendants do not contend that the original February 16, 2022 deadline should be applied, nor do they contend that the only time to be excluded in calculating a revised deadline should be the time when the district court lacked jurisdiction over the case. But if adjustments are to be made, why isn't the Kirlins' approach a sensible one? In the absence of a new TSDP, and given that the section 668.11 deadline had passed, why wouldn't the default deadline of 210 days before trial from the existing TSDP apply here?

One analogy to consider is speedy trial. If there is an appeal in a criminal case leading to a remand for a trial, we don't say that the state has to bring the defendant to trial within whatever remained of the 90-day deadline at the time the appeal was taken. *State v. Hamilton*, 309 N.W.2d 471, 475 (Iowa 1981) ("When a case on appeal is remanded, absent waiver of the right to a speedy trial, the period during which the defendant must be tried commences on the date procedendo issues.").

The following is the paragraph from the June 23, 2021 TSDP setting the original deadlines for expert disclosure:

8. **Expert witnesses**

    A. A party who intends to call an expert witness, including rebuttal expert witnesses, shall certify to the court and all other parties the expert's name, subject matter of expertise, and qualifications, within the following time period, unless the Iowa Code requires an earlier designation date (*see, e.g.,* Iowa Code section 668.11):

        (1) Plaintiff: 210 days before trial or by _____

        (2) Defendant/Third Party Plaintiff: 150 days before trial or by _____.

        (3) Third Party Defendant/Others/Rebuttal: 90 days before trial or by _____.

    B. Any disclosures required by Iowa Rule of Civil Procedure 1.500(2)(b) will be provided:
    *Check each that applies*

        (1) [X] At the same time the expert is certified.

        (2) [ ] According to the following schedule:

            a. Plaintiff: 210 days before trial or by _____.

            b. Defendant/Third Party Plaintiff: 180 days before trial or by _____.

            c. Third Party Defendant/Others/Rebuttal: 150 days before trial or by _____.

    C. This section does not apply to court-appointed experts.

According to the affidavits submitted by plaintiffs' counsel, they "believed § 668.11 was no longer applicable in this case" after the appeal and return of the case to district court. And no new TSDP had been entered. Thus, under the extant TSDP, in the view of plaintiffs' counsel, the deadline defaulted to 210 days before trial under paragraph 8(B). This may have been incorrect, but it wasn't plainly unreasonable.

The defendants do not cite a single case where we have adopted a tolling rule when a fixed deadline for disclosure—not tied to the trial date—expired while a matter was on appeal. Usually, we assume that new deadlines will be established following remand. The defendants' tolling rule raises several practical concerns. What if only a few days remain under the tolling rule when the remand occurs? Should we expect parties with dismissed cases on appeal to

spend time and money preparing those cases for trial? The present case is not a situation where the deadline had lapsed *before* a dismissal order that was then appealed and reversed. *Cf. Douglas v. Burley*, 134 So. 3d 692, 694–95, 699–700 (Miss. 2012) (en banc) (finding that a trial court abused its discretion when it allowed the plaintiffs to add an expert following remand where the expert designation and disclosure deadline had expired long before the reversed dismissal order).

A relevant precedent is *Connolly v. Foudree*, 141 F.R.D. 124 (S.D. Iowa 1992). In that case, the plaintiff filed a professional malpractice case in Polk County District Court, which the defendants removed to the United States District Court for the Southern District of Iowa. *Id.* at 125. The plaintiff missed the section 668.11 deadline for certification of expert witnesses. *Id.* at 126. Yet the plaintiff furnished his designation of expert witness promptly once the federal court made it clear that the statute applied even in federal court. *Id.* at 129. Weighing these circumstances, the court found good cause to excuse the plaintiff's noncompliance with the statute. *Id.* at 130. The court acknowledged that it had been "unclear" whether the statute applied in federal court and "[t]he defendants did not raise the issue until well after the 180-day deadline had passed." *Id.* Similar circumstances are present here.

**C. Lack of Prejudice to the Defendants.** We are unable to detect any actual prejudice suffered by the defendants. Dr. Jones and MPC offer general arguments that late disclosure "impacts ongoing discovery, strategy, and motion practice" and that "Defendants' ability to work with experts of their own is prejudiced, as without specific, timely opinions from Plaintiffs' expert witnesses, [Defendants] are left to guess what Plaintiffs' experts' theories of [Defendants'] specific negligence might be." This argument doesn't add up here. Under the

original, pre-appeal TSDP, the Kirlins' expert disclosures were due February 16, 2022. Trial was originally scheduled for July 17, just 146 days later. Following our reversal and remand, the plaintiffs understood their expert disclosures were due 210 days before trial and actually provided those disclosures 223 days before trial. So, Dr. Jones and MPC's arguments about being squeezed by the timing of the Kirlins' disclosures don't wash. The defendants received those disclosures 223 days before trial; if the lawsuit had gone forward according to the original schedule, they would have received them 146 days before trial.

Dr. Monaster, represented separately, offers only a "presumed prejudice" argument. "Presumed prejudice" is not the same as real prejudice.

**D. Plaintiffs' Diligence in Pursuing the Litigation.** We also find that plaintiffs' counsel pursued the litigation with diligence. Following a successful appeal to our court, they wrote the defendants' counsel the day after procedendo issued, sending a proposed new TSDP. Receiving no response, they wrote the defendants' counsel again. Within a few weeks, a new trial date was set, but there was no agreement establishing a new TSDP. When the defendants moved for summary judgment on July 31, 2023, claiming the deadline for expert certifications had passed, plaintiffs' counsel filed their expert disclosures within eight days—or thirteen days ahead of the deadline that plaintiffs' counsel had computed. The disclosures showed that the plaintiffs had retained not only the family physician expert whose disclosure had long ago been provided under Iowa Code section 147.140, but also a neurosurgeon and an economist.

The district court faulted the plaintiffs for not "seek[ing] clarification as to whether the section 668.11 deadline continued to apply" but instead "simply ignor[ing] it." We agree with the district court to some extent. Before turning to a default deadline, plaintiffs' counsel should have sought clarification. Still,

plaintiffs' counsel didn't simply ignore the section 668.11 deadline; they reasoned that it no longer applied. Ultimately, an error of judgment in not seeking clarification is not the same as a lack of diligence.

**E. The Actions of Defense Counsel.** Lastly, we turn to the actions of the defense counsel. In *Hantsbarger*, we took note that "defendant's counsel silently waited for the time period to pass and then used plaintiffs' deficient designation to seek a prohibition of plaintiffs' experts and a dismissal of their claims." 501 N.W.2d at 505. Yet, we emphasized that defense counsel are not their "brother's keeper." *Id.*

This case involves more than mere silence on the part of defense counsel. Notwithstanding their undisclosed position that the deadline had passed on March 21, 2023, defense counsel participated in a scheduling conference with the court on March 30 without raising the point. Then, after the conference, counsel for Dr. Monaster emailed counsel for the Kirlins and for the other defendants and stated, "It is my preference to have a date certain for experts." About twenty minutes later, counsel for Dr. Jones and MPC wrote, "I'm for dates certain too." In short, the email trail indicates that defense counsel were not relying on the March 21 date they later invoked as a deadline. Instead, they offered the view that the expert deadline was an open question to be determined.

At the very least, defense counsel's course of conduct does not *support* the district court's ruling.

**F. Iowa Caselaw Cited by the District Court and the Parties.** Finally, we find the principal case cited by the district court and the defendants to be distinguishable. The district court and the defendants quote *Sleeper v. Killion* for the following proposition: "The rule has been stated to be in such cases that a general and unqualified reversal of a judgment or decree, without other order or

direction, is to nullify it completely, and to leave the case standing as if such judgment or decree had never been entered." 164 N.W. at 245.

But what does *Sleeper* actually stand for? In the original appeal in *Sleeper,* we had reversed a foreclosure decree, holding that the rights of a protected person had been wrongfully terminated due to improper notice to the guardian. *See id.* at 242–43. Then, on remand, the parties who lost on appeal raised a different theory: that they were entitled to two-thirds of the property claimed by the protected person anyway. *Id.* at 244–45. We held that they could raise this new theory because it wasn't precluded by the terms of our reversal and remand. *Id.* at 245.

In short, *Sleeper* was a decision about the *substantive* effects of a reversal and remand. It does not support the proposition that a reversal and a remand operate as a *procedural* time machine, sending everyone back magically to the precise moment of the district court's erroneous ruling. *Sleeper* is not relevant here.

The district court (but not the defendants) also cited *Taylor v. Burgus*, 262 N.W. 808. It is distinguishable for similar reasons. In *Taylor*, we held that the defendant's motion for directed verdict should have been granted, which under our then-existing practice meant that a new trial would be ordered. *Id.* at 810. But the defendant didn't want a new trial under *any* circumstances, so we affirmed the judgment below. *Id.* at 811. In the course of our opinion, we said, "It is fundamental that a general order of reversal cancels the district court judgment and sends the case back for a full retrial of the entire case. Under such circumstances [the] case stands for retrial the same as though there has been no former trial." *Id.* at 810 (citations omitted).

*Taylor* thus deals with the separate question of whether you reverse for a new trial or reverse for entry of judgment in the moving party's favor when the appellate court concludes that a motion for directed verdict was erroneously denied. Not only would we answer the question differently today than in the time of *Taylor, see, e.g., Selden v. Des Moines Area Cmty. Coll.*, 2 N.W.3d 437, 448–49 (Iowa 2024), but it's a question that has nothing to do with the present case.

In determining that the district court abused its discretion in not finding good cause for allowing the Kirlins' section 688.11 expert certification, we do not mean to suggest that the Kirlins' counsel are blameless. As we have already observed, when a case is remanded after an appeal, a prudent counsel should confirm all deadlines. Still, at the end of the day, we need to take into account (1) the confusion as to expert deadlines and the plausibility of the plaintiffs' view as to the correct deadline, (2) the lack of prejudice to the defendants, (3) the zeal with which the plaintiffs were pursuing their case, and (4) the behavior of defense counsel. When we do, we conclude that the district abused its discretion and that reversal and remand are warranted.

**IV. Conclusion.**

For the foregoing reasons, we reverse the summary judgment entered by the district court and remand for further proceedings consistent with this opinion.

**Reversed and Remanded.**